UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

HELEN A. MANNEH,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

Case No. 2:15-cv-02200-PAL

**ORDER**

(Mot. to Remand – ECF No. 19)
(Cross-Mot. to Affirm – ECF No. 22)

This matter involves Plaintiff Helen A. Manneh's appeal and request for judicial review of the Social Security Administration's final decision denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–83.[1] This case was referred for a determination and entry of final judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. *See* Reference Order (ECF No. 23).

## **BACKGROUND**

On September 21, 2009 and October 30, 2009 respectively, Manneh protectively applied for a period of disability, Disability Insurance Benefits, and Supplemental Security Income alleging she had become disabled and unable to work since August 29, 2009 due to medical impairments. AR 222–227. Her application was denied initially on March 10, 2010, and upon administrative reconsideration on August 4, 2010. AR 120–132. She requested a hearing before an Administrative Law Judge on September 1, 2010. A hearing was conducted October 26, 2011

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to the Federal Rules of Civil Procedure and the Social Security Act, the court therefore substitutes Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit. *See* Fed. R. Civ. P. 25(d) (allowing automatic substitution of a successor to a public officer who is a party to an action but ceases to hold office while the action is pending); 42 U.S.C. § 405(g).

1  in Las Vegas, Nevada.  Manneh was represented by counsel. AR 48–69.  The Administrative Law

2  Judge ("ALJ") issued an unfavorable opinion on November 22, 2011. AR 103–114.  Plaintiff

3  submitted new evidence and the opinion was vacated by the Appeals Council on July 12, 2013.

4  AR 115–19.  The Appeals Council remanded the case for another administrative hearing providing

5  the ALJ with detailed instructions. *Id.*

6          The second hearing occurred on November 7, 2013, in Las Vegas, Nevada.  AR 70–87.

7  The plaintiff was represented by counsel.  On April 3, 2014, the ALJ issued a second decision

8  again determining that Manneh was not disabled.  AR 13–35.  Manneh requested review by the

9  Appeals Council.  AR 8–9.  The Appeals Council denied the request for review on April 3, 2014,

10  making the ALJ's decision the final decision of the Commissioner.  AR 1–7.  Manneh filed a

11  complaint in federal court seeking judicial review of the adverse decision pursuant to 42 U.S.C.

12  § 405(g).  The Commissioner filed an answer and the court issued a scheduling order setting a

13  briefing schedule.

14          Currently before the court is Manneh's Motion for Reversal and/or Remand (ECF No. 19)

15  and the Commissioner's Cross-Motion to Affirm (ECF No. 22).  Manneh did not file a reply, and

16  the deadline to file a reply has expired.  The court has reviewed the record and considered the

17  parties' motions.  Manneh's sole claim on appeal is that the ALJ committed reversible error by

18  failing to properly consider her testimony.  For the reasons explained, the court denies Manneh's

19  motion and grants the Commissioner's Cross-Motion.  The ALJ's findings that Manneh has not

20  been under a disability as defined in the Social Security Act from August 29, 2009, through the

21  date of the April 3, 2014 decision is supported by substantial evidence.

22  **I.     APPLICABLE LAW**

23          **A.  Judicial Review of Disability Determinations**

24          Federal district courts review administrative decisions in social security benefits cases

25  under 42 U.S.C. § 405(g).  However, judicial "review of social security determinations is limited."

26  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  After an ALJ has

27  held a hearing and the decision is final, § 405(g) allows a disability claimant to seek judicial review

28  of an adverse decision by filing a lawsuit in a federal district court within the district where the

1  claimant lives.  The statute authorizes the court to enter "a judgment affirming, modifying, or

2  reversing the decision of the Commissioner of Social Security, with or without remanding the

3  cause for a rehearing."  42 U.S.C. § 405(g).

4          The ALJ's findings of fact are conclusive if they are supported by "substantial evidence."

5  42 U.S.C. § 405(g).  The court may reverse "only if the ALJ's decision was not supported by

6  substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."

7  *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017).  "Substantial evidence means more than

8  a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."  *Trevizo v. Berryhill*, 871 F.3d 664, 674

10  (9th Cir. 2017).  To determine whether the ALJ's findings are supported by substantial evidence,

11  a court "must consider the entire record as a whole and may not affirm simply by isolating a

12  specific quantum of supporting evidence."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

13  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should

14  be upheld."  *Trevizo*, 871 F.3d at 674–75 (quotation omitted).

15          **B.  Disability Evaluation Process**

16          A five-step sequential evaluation process is used to determine whether a claimant is

17  disabled and eligible for benefits:

18          First, the agency must consider the claimant's current work activity.  Second, the
        agency must consider the medical severity of the claimant's impairments.  Third,
19          the agency must determine whether the severity of those impairments is sufficient
        to meet, or medically equal, the criteria of an impairment listed in three of the Social
20          Security Act's implementing regulations, published at 20 C.F.R. §§ 404.1520(d),
        404.1525–26.  Fourth, the agency determines whether the claimant can perform
21          past relevant work in light of the claimant's residual functional capacity.  Fifth, the
        agency assesses whether the claimant can make an adjustment to other work that
22          exists in significant numbers in the national economy, based on the claimant's
        residual functional capacity.
23

24  *Shaibi*, 883 F.3d at 1106 (citing 20 C.F.R. § 404.1520(a)).  "'The claimant carries the initial burden

25  of proving a disability in steps one through four'."  *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676,

26  679 (9th Cir. 2005)).  To meet this burden, the claimant must demonstrate an "inability to engage

27  in any substantial gainful activity by reason of any medically determinable physical or mental

28  impairment which can be expected . . . to last for a continuous period of not less than 12 months."

3

42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to continue his or her past work with specific medical evidence, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Shaibi*, 883 F.3d at 1106.

## II. THE ALJ'S DECISION

An ALJ is required to follow the five-step process to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an ALJ makes a finding of disability or non-disability at any step, no further evaluation is required. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the ALJ followed the five-step process and issued an unfavorable decision on April 3, 2014. AR 13–35 (the "Decision"). At step one, the ALJ found that Manneh had not engaged in substantial gainful activity since August 29, 2009, the alleged onset date. AR 15. At step two, the ALJ found that Manneh had the following impairments: degenerative disc disease of the lumbar/cervical spine, chronic pain syndrome (subsequent to the cervical fusion in 2009), and fibromyalgia, which were severe in combination. *Id.* Additionally, he found that these impairments more than minimally affected her ability to perform basic work activities. *Id.* She also complained of other impairments including headaches, which the ALJ found were non-severe for Social Security purposes because they did not cause significant limitations in Manneh's ability to perform basic work activities for the reasons explained in detail in his decision. At step three, the ALJ found that Manneh did not have an impairment or combination of impairments that met or medically equaled the severity of one of the conditions in the Listings. *Id.*

### A. Step Four – RFC Determination

The fourth step requires an ALJ to determine whether a claimant has the RFC to perform his or her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with

4

the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record. An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

> After considering the entire record, the ALJ concluded that Manneh had the RFC to
>
> perform the full range of "sedentary" work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). She could lift and carry no more than 10 pounds, both frequently and occasionally, she could sit for 6 hours, cumulatively, in an 8-hour workday. She could stand and/or walk for 2 hours, cumulatively, in an 8-hour workday.

AR 16. In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and the other evidence based on the requirements of 20 C.F.R. 404.1529, 416.929, SSR 96-4p and SSR 96-7p." *Id.* He also considered medical opinion evidence in accordance with the requirements of the applicable Code of Federal Regulations and Social Security Regulations. After considering the evidence, he found that Manneh's medically determinable impairments could not reasonably be expected to produce the alleged symptoms, to the extreme degree she alleged. As a result, the ALJ found her statements concerning the intensity, persistence and limiting effects of these symptoms were not substantially credible considering the record in its entirety. *Id.*

## B. Step Four – Ability to Perform PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform her PRW. 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work a claimant performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b). In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965.

5

1   If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a

2   claimant is not disabled.

3       The Department of Labor publishes the Dictionary of Occupational Titles (DOT), which

4   provides "detailed physical requirements for a variety of jobs." *Bray v. Comm'r of Soc. Sec.*

5   *Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1153

6   n.8 (9th Cir. 2007)). The ALJ and/or a vocational expert utilizes the DOT in determining whether

7   a claimant, given his RFC, can perform his PRW. *Id.* (citing 20 C.F.R. § 404.1560(b)(2)).

8       At step four in the Decision, the ALJ concluded that Manneh could perform her PRW as

9   an office manager, as generally performed. AR 33–34. This work did not require the performance

10  of work-related activities precluded by her RFC. He found that Manneh performed her past

11  relevant work as a Better Business Bureau membership manager, which was categorized by the

12  vocational expert as an office manager, DOT Job No. 169.167-034, as "sedentary" skilled work

13  with an SVP of 7, from January 1996 to August 2009." Her prior work met the Social Security

14  Administration requirements for substantial gainful activity. Considering Manneh's residual

15  functional capacity on a function-by-function basis, with the demands of the job, as generally

16  performed in the national economy by using the DOT and relying on the vocational expert's

17  testimony, the ALJ concluded that an individual with a "sedentary" level of work designation,

18  could perform her past relevant work as a "sedentary" office manager. He credited Manneh's

19  testimony that she performed her PRW at the Better Business Bureau at a "light" level of exertion.

20  Consistent with the testimony of the vocational expert and Manneh's work history report, the ALJ

21  found she could not perform her past job at the Better Business Bureau as it was actually

22  performed. However, she could perform work as an office manager at the sedentary level of

23  exertion. He concluded that Manneh was not under a disability, as defined in the Social Security

24  Act, from August 29, 2009 through the date of his April 3, 2014 decision.

25                                                    **DISCUSSION**

26      Reviewing the record as a whole, weighing both the evidence that supports and the

27  evidence that detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported

28  by substantial evidence, and the ALJ did not commit reversible error.

I.    **THE PARTIES' POSITIONS**

The sole issue on appeal is whether the ALJ committed reversible error in failing to properly assess Manneh's credibility. Manneh seeks reversal and remand of the Decision arguing the ALJ failed to articulate sufficient reasons to find she was not credible. Manneh claims she presented objective medical evidence of underlying impairments that could be expected to produce the pain and symptoms she alleged. Where there is no evidence of malingering in the record, the ALJ may only reject her testimony about the severity of her symptoms by offering specific, clear and convincing reasons. Manneh asserts the ALJ "answered the wrong question in articulating the degree of limitation established by the objective medical evidence does not support Ms. Manneh's descriptions." She contends that because the ALJ found that a severe medical impairment was likely to produce subjective limitations, if there is no evidence of malingering, "the true question is whether there is [*sic*] any clear and convincing reasons for rejecting" her testimony. Because the ALJ failed to articulate clear and convincing reasons, the court should credit her testimony as true and remand for an award of benefits. Alternatively, the court should remand "for the correction of legal errors."

The Commissioner's cross-motion to affirm argues that the ALJ properly assessed Manneh's credibility and determined that she is not disabled. The ALJ gave several reasons for rejecting Manneh's testimony about the intensity, persistence, and limiting effects of her symptoms, and those reasons are supported by substantial evidence in the record. The Commissioner acknowledges that the Ninth Circuit "has sometimes employed" a clear and convincing reasons standard. The Commissioner contends the clear and convincing standard is inconsistent with the deferential substantial evidence standard prescribed by Congress in 42 U.S.C. § 405(g) and applicable Social Security regulations and rulings. However, the Commissioner argues that the decision should be upheld under either standard. Manneh's motion to remand admits that the Ninth Circuit's clear and convincing reasons standard only applies if there is no evidence of malingering. Here the ALJ's decision noted "rampant exaggeration documented in this record" and "extreme magnification of signs and symptoms" AR 17. The ALJ also discussed Manneh's improvement and noted that it was only after her insurance company denied her request

1  for massage therapy that she began "increasing her reports of symptoms." AR 20. It is appropriate

2  for an ALJ to consider a claimant's tendency to exaggerate, inconsistent statements, and failure to

3  cooperate during examinations. The Commissioner maintains that the Ninth Circuit has held that

4  an ALJ need not make a specific finding of malingering to discredit a claimant's testimony, and

5  that evidence of malingering suffices.

6  **II.    LEGAL STANDARDS**

7         The Ninth Circuit has established a two-step analysis for determining the extent to which

8  a claimant's symptom testimony must be credited. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th

9  Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also Trevizo v.*

10 *Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant

11 has presented objective medical evidence of an underlying impairment that could reasonably be

12 expected to produce the pain or other symptoms alleged. *Leon v. Berryhill*, 880 F.3d 1041, 1046

13 (9th Cir. 2017). At this first step, a claimant need only show that his or her impairment could

14 reasonably have caused *some degree* of the symptom alleged. *Garrison v. Colvin*, 759 F.3d 995,

15 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant

16 is not required to show that the impairment could reasonably be expected to cause the severity of

17 the symptoms or produce objective medical evidence of the pain, fatigue, or the severity thereof.

18 *Id*.

19        If a claimant satisfies the first step of this analysis, and there is no evidence of malingering,

20 the ALJ may only reject the claimant's testimony about the severity of her symptoms by offering

21 "'specific, clear and convincing reasons'" for doing so. *Leon*, 880 F.3d at 1046 (quoting *Treichler*

22 *v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014)).[2] As the Ninth Circuit

23 has recognized, this is not an easy requirement to meet because the "clear and convincing standard

24
25
26
27
28

---

[2]  The Commissioner acknowledges that the "clear and convincing" standard is a part of Ninth Circuit case law this court is obligated to apply but maintains that the standard only applies in some circumstances and that it is inconsistent with the deferential "substantial evidence" standard prescribed by Congress in 42 U.S.C. § 405(g). The Ninth Circuit has specifically and repeatedly rejected this position. *See*, *e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (noting that the Commissioner disputed the "clear and convincing" standard and finding that *Burrell* foreclosed the Commissioner's argument); *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also Trevizo*, 871 F.3d at 678–79 (stating the clear and convincing standard).

1  is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting

2  *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  However, "the ALJ is not

3  required to believe every allegation of disabling pain," otherwise disability benefits "would be

4  available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d

5  at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

6      In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility

7  evaluation."  *Molina*, 674 F.3d at 1112 (quoting *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1224

8  n.3 (9th Cir. 2010)).  For example, an ALJ may consider factors such as: (i) inconsistencies either

9  in the claimant's testimony or between the testimony and the claimant's conduct; (ii) unexplained

10  or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

11  (iii) whether the claimant engages in daily activities inconsistent with the alleged symptoms;

12  (iv) the observations of treating and examining physicians and other third parties regarding the

13  claimant's symptoms; (v) functional restrictions caused by the symptoms; and (vi) the claimant's

14  daily activities.  *Molina*, 674 F.3d at 1112; *Rounds*, 807 F.3d at 1006; *Smolen*, 80 F.3d at 1284.

15      "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow

16  a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

17  grounds and did not arbitrarily discredit a claimant's testimony regarding pain'."  *Brown-Hunter*,

18  806 F.3d at 493 (quoting *Bunnell*, 947 F.2d at 345–46).  "General findings are insufficient; rather,

19  the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

20  complaints."  *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  "Although the

21  ALJ's analysis need not be extensive, the ALJ must provide some reasoning" that will allow a

22  reviewing court "to meaningfully determine whether the ALJ's conclusions were supported by

23  substantial evidence."  *Id.* at 495 (quoting *Treichler*, 775 F.3d at 1103).  An ALJ is not required to

24  specifically recite "magic words" or an "incantation" to support his analysis.  An ALJ's decision

25  is sufficiently supported when the ALJ summarizes facts and conflicting clinical evidence in a

26  detailed and thorough fashion, stating her interpretation and making findings.  *Magallanes v.*

27  *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that case law does not require an ALJ to

28  expressly state: I reject __ because of __ reason).

9

# III. ANALYSIS OF THE MOTIONS

The ALJ's 23-page decision comprehensively and thoroughly summarized Manneh's testimony at the administrative hearing, lay opinions of record, the records of Manneh's pain management specialist, Dr. Robert Bien, M.D., treatment records concerning Manneh's spinal condition, fibromyalgia and chronic pain syndrome, abdominal issues, complaints of COPD, headaches/chest pain, and mental health treatment. The decision also summarized in a detailed and thorough fashion the medical opinions of Dr. Sheryl Anne Yu, and the psychological evaluations performed by Consultative Examiner, Dr. Kenneth McKay, Ph.D. His opinions summarized the findings of Disability Determination Services' ("DDS") physicians and psychologists. Specifically, he considered and discussed the opinions of DDS physical reviewer Dr. April Henry, initial psychological reviewer Dr. H. Mark Evans, Ph.D. in psychology, and DDS psychological reviewer Dr. Jocelyn Fuller, Ph.D. in psychology.

The ALJ found that Manneh's degenerative disc disease of the lumbar/cervical spine, chronic pain syndrome following her 2009 cervical fusion and fibromyalgia were severe in combination. He found that Manneh's other reported impairments were non-severe because, for the reasons he explained in great detail, the record did not document any significant limitations associated with them. Manneh does not challenge the ALJ's findings regarding the conditions that were severe in combination or that her other reported conditions were non-severe. She also does not claim on appeal that her conditions do not meet the Listings criteria.

The court's review of the record supports the ALJ's findings that Manneh's severe impairments could not be expected to produce the extreme symptoms she alleged, and that her statements about the intensity, persistence and limiting effects were not credible considering the evidence in the record in its entirety. Moreover, there is substantial evidence in the record to support the ALJ's findings of "rampant exaggeration" and "extreme magnification of signs and symptoms." AR 17.

At the hearing, Manneh's counsel agreed that the record was complete. AR 72. However, counsel brought an additional record to the hearing "to show that she has a new problem with chronic vomiting and weight loss along with the other stuff." *Id.* Counsel represented that there

was no diagnosis for the vomiting and weight loss, stating "they're just starting to test for it." *Id.*

Manneh testified that she graduated from high school and had some college education. AR 75. She was a membership manager at the Better Business Bureau whose duties included talking on the telephone, sitting at the desk most of the time, making deposits, and helping her boss with accounting. AR 75–76. The ALJ indicated he was not going to ask Manneh questions posed at the prior hearing because they were in the record but did ask whether she was still treating with UMC Southern Nevada Adult Mental Health. AR 76. Manneh testified she was. *Id.* She was no longer going to the same pain management specialist for fibromyalgia. *Id.* UMC was closing its pain management department and was going to refer her to a different doctor. AR 76–77. She had blood work done the day before the hearing but had not received the results yet. AR 77. She testified she was using a walker that the doctor gave her. *Id.* She had fallen down three times and her energy was not "really good". *Id.* She testified that she was weak, tired and sometimes got confused and didn't understand the ALJ's question. AR 77–78. She testified she was tired 24 hours a day and had trouble understanding what people are saying, got confused, and was depressed and anxious. AR 78.

Her stomach always hurt and she was nauseous. *Id.* She got headaches a lot. AR 79. Recently, her headaches were daily and "killing" her. She experienced numbness and tingling in her face and hands and was not able to sleep. *Id.* For up to three nights, she goes without a minute's sleep from the pain. *Id.* She had difficulty eating because of blisters affecting her teeth. *Id.* Her vision was blurry and she always had dry mouth. AR 80. Her neck and back itched. *Id.* She believed there was a scar on her neck from scratching and "somewhere else too." Her ears were always ringing and her eyes were dry all of the time. At the time of the hearing, she weighed 135 pounds. *Id.* However, that was not her normal weight. *Id.* She had problems with the heat and the sun. *Id.* She also had a hair loss problem. AR 80–81. She has the urge to go to the bathroom a lot—ten to fifteen times a day—and had embarrassing accidents. AR 81. She did not socialize or have regular social activities. *Id.* She did not answer the door when home alone. She did not answer the cell phone unless it was her daughter. She sometimes got panic attacks, was scared, and was always confused. *Id.*

11

1    The ALJ inquired of counsel for Manneh where the administrative record showed that she

2    was prescribed a walker because he could not find it.  AR 82.  Manneh rather than her counsel

3    responded that she got the walker at the beginning of the year of the administrative hearing, *i.e.*,

4    in 2013.  She testified that Dr. Rooker [phonetic] recommended a cane and a walker.  *Id.*  She also

5    testified that another doctor at UMC Leid, Dr. Cody, gave her a walker "because I start to fall

6    down".  *Id.*  The ALJ left the record open for 30 days for counsel for Manneh to provide evidence

7    that she was prescribed a walker.  AR 83.  Manneh then volunteered that she got the walker the

8    year before "because it was cold."  AR 83.

9    The court finds the ALJ did not commit reversible error in evaluating the medical evidence

10   of record in assessing Manneh's' credibility.  To the extent there were conflicting opinions and

11   testimony regarding the degree of Manneh's functional limitations, it was the ALJ's duty to resolve

12   those conflicts.  "For highly fact-intensive individualized determinations like a claimant's

13   entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the

14   sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute

15   their discretion for that of the agency'."  *Treichler*, 775 F.3d at 1098 (quoting *Consolo v. Fed.

16   Mar. Comm'n*, 383 U.S. 607, 621 (1966)).  Thus, courts must "leave it to the ALJ to determine

17   credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Id.* (citing

18   42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The ALJ's findings

19   must be upheld if they are supported by inferences reasonably drawn from the record.  *Batson v.

20   Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Where evidence is susceptible

21   to more than one rational interpretation, the ALJ's decision should be upheld."  *Trevizo*, 871 F.3d

22   at 674–75 (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

23   Here, the ALJ's credibility findings are a rational interpretation of the record as a whole.

24   "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective

25   testimony."  *Carmickle v. Comm'r Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  The

26   ALJ correctly found that no physician, treating or otherwise, opined that Manneh was totally

27   disabled or unable to work for a continuous 12- month period from the alleged onset date.  *See

28   Matthews v. Shalala*, 10 F.3d 678, 680–81 (9th Cir. 1993) (in upholding the Commissioner's non-

12

1   disability decision, the Ninth Circuit emphasized: "None of the doctors who examined [claimant]

2   expressed the opinion that he was totally disabled"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 n.1

3   (9th Cir. 1990) (upholding Commissioner and noting that after surgery, no doctor suggested

4   claimant was disabled). The ALJ correctly found that none of the doctors who treated or examined

5   Manneh opined that she was totally disabled.

6          The record also supports the ALJ's finding of rampant exaggeration and magnification of

7   symptoms in Manneh's testimony regarding disabling pain and limitations. For example, although

8   the ALJ gave counsel for Manneh an opportunity to keep the record open to document her claim

9   that she was prescribed a cane or walker for falling, there is no evidence of a prescription in the

10  record. The ALJ correctly pointed out that Manneh tried to get a note from UMC about the walker,

11  but that the handwritten medical record shows it was Manneh telling the UMC provider why a

12  walker was necessary, not a UMC provider agreeing it was. The ALJ also found that Manneh was

13  not entirely credible because she claimed she was prescribed a walker and a cane beginning in

14  2013, but there was no prescription for a walker or a cane in the record. Moreover, the record

15  supports the ALJ's finding that the medical records reflect that the walker was rarely used during

16  Manneh's medical visits. The ALJ's finding that no medical expert had stated that an assistive

17  device was a medical necessity is supported by the record.

18         The record supports the ALJ's finding that although Manneh testified she had fallen three

19  times, she repeatedly denied falls to treating providers and there was no medical record

20  corroborating treatment for falls. The record supports the ALJ's findings that the medical records

21  repeatedly noted her gait was normal during most evaluations. He therefore found her testimony

22  that she had fallen three times not credible considering the treatment notes that repeatedly and

23  affirmatively reflected that she had no fall risk. Multiple medical records specifically inquired and

24  noted that Manneh was not a fall risk.

25         The ALJ also found Manneh was not entirely credible because her allegations of daily

26  headaches were not corroborated by even a single treatment note. The ALJ correctly found that

27  there were no treating notes indicating Manneh ever complained of daily headaches. There is

28  support in the record for the ALJ's finding that brain imaging records reported normal findings.

13

1   Similarly, there were no medical records supporting Manneh's claim of daily vomiting. The record

2   supports the ALJ's finding that although Manneh claimed she was under-weight, her body weight

3   was within normal range. She is 5'2" and testified she weighed 135 pounds at the administrative

4   hearing.

5         The ALJ discredited Manneh's testimony that she had a severe gastrointestinal disorder

6   because she had declined a gastrointestinal workup in the past. The record supports this finding.

7   Similarly, the record supports the ALJ's findings that, although she used eye drops for her eyes,

8   there was no clinical evidence of any significant visual deficit. The record supports the ALJ's

9   finding that Manneh denied ringing of the ears to treating providers on multiple occasions.

10  Similarly, the ALJ found that although Manneh testified she had trouble understanding others and

11  memory issues, suffered from a lack of energy, anxiety, and depression, treatment records from

12  mental health was minimal and she declined free counseling on multiple occasions. The record

13  does not contain evidence substantiating her claims regarding the severity of her depression,

14  anxiety, fibromyalgia, complaints of chronic pain and spinal pain following surgery. The record

15  supports the ALJ's finding that treatment notes and imaging results after her 2009 surgery

16  documented remarkable improvement, as well as her own subjective reports of improvement until

17  her request for home physical therapy with massage was denied. Only after she was denied

18  massage therapy did she begin reporting extreme symptoms and lack of improvement.

19        The ALJ concluded that "the litany of allegations, as compared to the overall treatment

20  record, continued to suggest extreme magnification of signs and symptoms." AR 17. The record

21  amply supports the ALJ's finding.

22        The ALJ's opinion thoroughly summarized and discussed Manneh's treatment records in

23  chronological order by provider. She does not claim the ALJ distorted the record or "cherry-

24  picked" any portion of the administrative record. The ALJ also thoroughly summarized and

25  discussed the medical opinion testimony. The AJL's finding that Manneh was not fully credible

26  concerning the severity and limiting effects of her combination of conditions is amply supported

27  in the record. The ALJ correctly found that there was no medical source statement that would

28  contradict the RFC he found for Manneh. No treating, examining, or reviewing physician

14

1     concluded that she could not perform work with the restrictions stated in her RFC assessment.

2          As the ALJ found, Manneh suffers from severe impairments in combination. However,

3     reviewing the record as a whole, the court finds Manneh did not meet her burden of establishing

4     she was disabled as defined by the Social Security Act from August 29, 2009, through the date of

5     the ALJ's April 3, 2014 decision. If the record will support more than one rational interpretation,

6     the court must uphold the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. The ALJ's

7     findings are amply supported by the record and inferences reasonably drawn from the record.

8          The ALJ's Decision comprehensively reviewed summarized and discussed Manneh's'

9     medical records. Manneh's motion does not cite a single medical record contradicting any of the

10    ALJ's findings. The ALJ provided clear and convincing reasons for finding that Manneh's

11    allegations of disabling pain and limitations were not fully credible. Although he found her

12    impairments could reasonably be expected to cause some symptoms, her claims about the intensity,

13    persistence and limiting effects of those symptoms were not credible based on his review of the

14    entire record. The court finds that the ALJ did not err in his assessment that Manneh could perform

15    work as an office manager at the sedentary exertional level. The ALJ's determination that she was

16    not disabled must be upheld because it is supported by substantial evidence.

17                                    **CONCLUSION**

18         Judicial review of a decision to deny disability benefits is limited to determining whether

19    the decision is based on substantial evidence reviewing the administrative record as a whole. It is

20    the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a

21    whole, and resolve conflicts in the evidence and differences of opinion. Having reviewed the

22    Administrative Record as a whole, and weighing the evidence that supports and detracts from the

23    Commissioner's conclusion, the court finds that the ALJ's decision is supported by substantial

24    evidence under 42 U.S.C. § 405(g).

25         Accordingly,

26    / / /

27    / / /

28    / / /

15

**IT IS ORDERED:**

1. The Clerk of Court shall SUBSTITUTE Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

2. Plaintiff Helen Manneh's Motion for Reversal and/or Remand (ECF No. 19) is **DENIED**.

3. The Commissioner's Cross-Motion to Affirm (ECF No. 22) is **GRANTED**.

4. The Clerk of Court is instructed to enter judgment accordingly and close this case.

Dated this 11th day of February 2019.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE